IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                :     LEAD CASE NO. 10-07476 (ESL)

EMELLY RODRIGUEZ VAZQUEZ        :
        Debtor                               :     CHAPTER 13

EMELLY RODRIGUEZ VAZQUEZ        :
        Plaintiff                            :     ADVERSARY NO. 10-00171 (ESL)

       vs.                                    :

REO PROPERTIES CORP.; QUANTUM   :
SERVICES; CITIFINANCIAL         :
       Defendants                        :

**FILED & ENTERED**

**APR 1 3 2012**

U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO

## OPINION AND ORDER

In the instant adversary proceeding, the Court has questioned *sua sponte* its jurisdiction to review and/or overturn a State Court decision under the Rooker-Feldman doctrine and ordered Debtor to brief on the subject (Docket No. 61). Debtor filed a *Motion in Compliance with Order and Memorandum of Law* (Docket No. 70). For the reasons stated below, the court declares itself without subject-matter jurisdiction.

### Procedural Background

On September 25, 2007, the Puerto Rico Court of First Instance, Superior Court of Humacao (the "State Court"), entered a foreclosure judgment against Debtor in Case No. HSCI200700504 (208) (the "State-Court Foreclosure Judgment") (Docket No. 29-1, p. 2). The real property being foreclosed was located at Anton Ruiz Ward, Clavel Street #49, Humacao, Puerto Rico, registered at the Humacao Property Registry as Lot No. 23,674 in volume 557, page 160 (the "Real Property"). The State-Court Foreclosure Judgment ultimately resulted in a writ of execution and an order for the State Court Marshall to appear in a judicial sale deed after the public auction for the Real Property, which was held on August 10, 2010 (the "Judicial Sale", Docket No. 29-1, p. 1-10).

Debtor filed a voluntary Chapter 13 petition on August 17, 2010 (Lead Case Docket No. 1). In Schedule A, she reported the Real Property, and in Schedule D she reported codefendant Reo Properties Corp. ("Reo") as a secured creditor holding a mortgage note on that Property (Lead Case Docket No. 13, pp. 3 & 8).

On November 2, 2010, Debtor filed the *Complaint* that initiated the instant adversary

proceeding claiming that the Real Property was illegally sold at the Judicial Sale ordered by the State Court. Essentially, Debtor alleges that the foreclosure proceeding was null and void because of noncompliance with P.R. Rule 51.7(a) of Civil Procedure, 32 L.P.R.A. Ap. V R. 51.7 (2009), and other due process notification requirements, and because the mortgage note was assigned to Reo without prior notification to her. She seeks the Judicial Sale to be declared null and void (thus recovering the Real Property) plus costs, expenses, legal fees and damages (Docket No. 1). Codefendants Reo and Quantum Services Corp. ("Quantum") answered the *Complaint* essentially claiming that the judicial sale was lawfully conducted (Docket Nos. 9 & 10). Codefendant Citifinancial, Inc. ("Citifinancial") also answered the *Complaint* alleging that it had no personal or corporate involvement in the execution of the Real Property's mortgage (Docket No. 11). Citifinancial also filed a *Motion to Dismiss under Rule 12(b)(6)* for failure to state a claim upon which relief may be granted (Docket No. 26), which was granted in the *Partial Final Judgment* dismissing the *Complaint* against it (Docket No. 37). The *Partial Final Judgment* was not appealed.

On March 12, 2011, codefendants Reo and Quantum moved for summary judgment (Docket Nos. 29 & 30), and on May 10, 2011, Plaintiff filed her *Opposition* thereto (Docket No. 34). On May 18, 2011, the court issued a *Decision & Order* denying the motion for summary judgment concluding that there were genuine issues of material facts (Docket No. 35).

On September 30, 2011, the court scheduled a hearing for November 15, 2011 (Docket No. 58). At that hearing, the court *sua sponte* questioned its jurisdiction to review and/or overturn a final state court decision based on the Rooker-Feldman doctrine and afforded Debtor 30 days to brief the issue and 30 days for defendants and the Trustee to reply. On December 12, 2011 the court issued an *Order* for Debtor to show cause why the adversary proceeding should not be dismissed for failure to comply with the previous order (Docket Nos. 58 & 64). On January 10, 2012, Debtor filed a *Motion Requesting an Extention [sic] of Short Term to Reply to Order Dated 12/12/11* (Docket No. 66) and on January 12, 2012 the court granted a 7 day extension (Docket No. 67). On January 17, 2012, Debtor filed a *Motion in Compliance with Order and Memorandum of Law* (Docket No. 70) claiming that the Rooker-Feldman doctrine cannot be enforced in bankruptcy courts, that if applicable, it should be narrowly construed, and that "the judgment in the State Court is neither final

or from the [State's[ highest court" (Docket No. 70, p. 8). Debtor also insisted that this court should "exercise jurisdiction and discharge its supervisory powers to insure that there was ... compliance with the strict [state] statutory and constitutional requirements of foreclosure proceedings" and that "lacking evidence of such compliance, the [state] judicial sale [ordered by the State Court through the State-Court Foreclosure Judgment] should be reversed, as it is clearly null and void as a matter of law". Id. No further replies were filed by any other party.

Applicable Law & Analysis

Under 28 U.S.C. § 1257, only the United States Supreme Court has jurisdiction to hear appeals from final state court judgments. Under 28 U.S.C. § 1331, federal district courts can only exercise "original jurisdiction", not appellate jurisdiction. The Supreme Court merged the two statutes in two cases: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), commonly known as the Rooker-Feldman doctrine.

The Rooker-Feldman doctrine is "jurisdictional in nature" and therefore "if a case is dismissed because the Rooker-Feldman doctrine applies, it means the court has no subject-matter jurisdiction to hear the case." Mills v. Harmon Law Offices, P.C., 344 F.3d 42, 44 (1st Cir. 2003), citing In re Middlesex Power Equip. & Marine, Inc., 292 F.3d 61, 66 (1st Cir. 2002). Consequently, "it cannot be waived". In re Zambre, 306 B.R. 428, 432 (Bankr. D. Mass. 2004), citing In re Stoddard, 248 B.R. 111, 120 (Bankr. N.D. Ohio 2000). That is why a court can raise the issue sua sponte. See Mills v. Harmon Law Offices, P.C., 344 F.3d at 44. The doctrine is rooted in various principles: it (a) enforces constitutional separation of powers and the limited jurisdiction of federal courts; (b) advances interests of federalism by protecting state court judgments; (c) recognizes that state courts are fully competent to adjudicate state and federal claims; and (d) protects finality in the judicial system. See Dustin E. Buehler, Revisiting Rooker-Feldman, 36 Fla. St. U. L. Review, 373, 377 (2009), Williamson B.C. Chang, Rediscovering the Rooker Doctrine, 31 Hastings L. J. 1337, 1350 (1980), and George L. Proctor et al., Rooker-Feldman and the Jurisdictional Quandary, 2 Fla. Coastal L. J. 113, 114 (2000). Its rationale is that only the United States Supreme Court has jurisdiction over appeals from the state courts under 28 U.S.C. § 1257. See Federacion de Maestros de P.R. v. Junta

3

de Relaciones del Trabajo de P.R., 401 F.3d 17, 21 (1st Cir. 2005).

In essence, the Rooker-Feldman doctrine prohibits lower federal courts to sit in direct review of final state court judgments --unless Congress has specifically authorized such relief-- and that therefore federal courts should not become a court of appeals for state court decisions. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Miller v. Nichols, 586 F.3d 53, 58 (1st Cir. 2009) ("Rooker-Feldman bars jurisdiction whenever parties who lost in state court seek review and rejection of that judgment in federal court"); Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 68 (1st Cir. 2008); Schwartz v. Schwartz (In re Schwartz), 409 B.R. 240, 246-247 (B.A.P. 1st Cir. 2008). Also see generally 18B Wright, Miller & Cooper, Federal Practice and Procedure 2d § 4469.1, at pp. 100-01, 127-37 (2002). The doctrine bars a losing party in state court to file a suit in a federal district court --after the state proceeding has ended-- to complain of an injury caused by the state-court decision and seek review and rejection of the state-court judgment. Exxon Mobil Corp v. Saudi Basic Industries Corp., 544 U.S. 280, 284, 125 S. Ct. 1517 (2005). It forecloses lower federal court jurisdiction where the issues in the case are "inextricably intertwined" with controversies adjudicated by a state court. See Mills v. Harmon Law Offices, P.C., 344 F.3d at 44. A federal claim is "inextricably intertwined" with state court claims "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Sheehan v. Marr, 207 F.3d 35, 39-40 (1st Cir. 2000). In other words, the Rooker-Feldman doctrine precludes a federal action if the relief sought in the federal court "would effectively reverse the state court decision or void its holding." Halvorsen v. Mendez (In re Mendez), 246 B.R. 141, 146 (Bankr. D.P.R. 2000).

Concerned that some lower courts were construing the Rooker-Feldman doctrine too broadly, in Exxon Mobil Corp v. Saudi Basic Industries Corp., 544 U.S. at 284, the Supreme Court ruled that the doctrine should be "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers ... inviting district court review and rejection of [the state court's] judgments." Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 401 F.3d 17, was the first case ruled by the Court of Appeals for the First Circuit after Exon Mobil. In it, the Court of Appeals held that the Rooker-Feldman doctrine applies in limited circumstances where the losing party files the action in federal court after the state proceedings have "ended". 410 F.3d at 24.

4

A state court judgment is sufficiently final for the application of the Rooker-Feldman doctrine when the state proceeding has ended; if the federal proceedings are begun before the state proceedings have ended then the doctrine does not deprive the federal court of jurisdiction. Id. at 24, citing Exxon Mobil, 125 S.Ct. at 1526. The Court of Appeals described three situations, or tests, to determine whether state proceedings have "ended." 410 F. 3d at 24. First, state proceedings have ended "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved." Id. That is not the case in the instant adversary proceeding. Second, state proceedings have ended "if the action has reached a point where neither party seeks further action." Id. Lastly, state proceedings have ended, for purposes of the Rooker-Feldman doctrine, on the federal questions, "if the state court proceedings have finally resolved all the federal questions in the litigation but state law or purely factual questions remain to be litigated." Id.

In Puerto Rico, a judgment is a decision that finally resolves the controversy before the State Court so that an appeal may be taken. See P.R. Rule 42.1 of Civil Procedure, 32 L.P.R.A. Ap. V R. 42.1 (2009), and U.S. Fire Insurance Co. v. Autoridad de Energia Electrica, 151 D.P.R. 962, 967 (2000). A judgment becomes final and firm ("final y firme"), *ergo* executable, when it is no longer appealable or subject to reconsideration. Suarez Morales v. Estado Libre Asociado de Puerto Rico, 162 D.P.R. 43, 62 (2004), citing Bolivar v. Aldrey, 12 D.P.R. 273 (1907). Also see Pagán del Joglar v. Cruz Rivera, 136 D.P.R. 750, 757 (1994); Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642, 654 (1987); Figueroa v. Bayron, 75 D.P.R. 987, 989 (1954).

In the present case, the State-Court Foreclosure Judgment was entered on September 25, 2007 and notified to the parties on September 28, 2007 (Docket No. 29-1, p. 2). No party appealed it and as a result, a writ of execution was issued by the State Court (Docket No. 29-1, p. 2), which under Puerto Rico law can only occur after a judgment becomes final, firm and executable ("final, firme y ejecutable"). See P.R. Rule 51.1 of Civil Procedure, 32 L.P.R.A. Ap. V R. 51.1 (2009). Contrary to Debtor's allegation that "the judgment in the [State Court] is neither final nor from the highest court"[1], this court finds that the State Court judgment was final under Federacion de Maestros de

---

[1] *Motion in Compliance with Order & Memorandum of Law (Docket No. 70, p. 8)*

5

P.R.'s second standard. 410 F. 3d at 24.

Debtor also contends "that Rooker-Feldman **does not apply in bankruptcy courts**". *Motion in Compliance with Order & Memorandum of Law* (Docket No. 70, p. 5; original emphasis). To support that argument , she cited In re Weinraub, 361 B.R. 586, 593 (Bankr. S.D.Fla. 2007), and cases cited therein: Noel v. Hall, 341 F.3d 1148, 1155 (9th Cir. 2002) and Gruntz v. Los Angeles, 202 F.3d 1074, 10796 (9th Cir. 2000), none from the First Circuit. In our First Circuit, however, the Rooker-Feldman doctrine is applicable in both district and bankruptcy courts alike. See Schwartz v. Schwartz (In re Schwartz), 409 B.R. at 246-247; Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 403 (B.A.P. 1st Cir. 2004) ("under the Rooker-Feldman doctrine, a bankruptcy court, as a lower federal court, cannot review the final judgment of a state court"); In re Zambre, 306 B.R. 428 (bankruptcy court denied a motion to avoid a judicial lien based on the Rooker-Feldman doctrine); Gomes v. Limieux (In re Limieux), 306 B.R. 433, 441-442 (Bankr. D. Mass. 2004) (the bankruptcy court's jurisdiction to review the state court decision is precluded by the Rooker-Feldman doctrine); Halvorsen v. Mendez (In re Mendez), 246 B.R. 141, 145 (Bankr. D.P.R. 2000) (extending the doctrine to bankruptcy courts as a lower federal court "if, by so doing, it would be granting federal review of a state court determination or of an issue that is 'inextricably intertwined' with a state court judgment"). The Court is thus not moved by such argument.

Finally, the Debtor cites the recent case of Skinner v. Switzer, 131 S.Ct. 1289, 1297 (2011), to suggest that the Rooker-Feldman doctrine has become more narrowly construed and that "if a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court". *Motion in Compliance with Order & Memorandum of Law* (Docket No. 70, pp. 6-7). She failed to apply that case to the facts of the instant adversary proceeding, however, which are significantly distinguishable. In Skinner, the plaintiff was an inmate convicted of murdering his live-in girlfriend (bludgeoned and choked with an axe handle) and her two sons (stabbed to death). 131 S.Ct. at 1293. He had twice requested and failed to obtain DNA testing under Tex. Code Crim. Proc. Ann. Ch. 64, the only state-law procedure then available to him. After exhausting and losing all remedies the Texas State Courts provided under that statute, he proceeded to file an federal action for injunctive

relief targeting "as unconstitutional the Texas statute the Texas [courts] authoritatively construed". Id. at 1297. The Supreme Court held that the Rooker-Feldman doctrine was inapplicable with the distinction that "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action". Id. at 1298. In the instant case, Debtor does not challenge a state "statute or rule governing the [state-court] decision", but rather complains about the State Court Foreclosure Judgment itself and its subsequent results, which is precisely what the Rooker-Feldman prohibits.

Debtor's *Complaint* falls squarely within the Rooker-Feldman doctrine: it is brought by the state court loser (*i.e.* Debtor) who wants a federal court to review and ultimately reject, set aside and declare null and void a pre-petition final, firm and executed State-Court Foreclosure Judgment that ordered the Judicial Sale of the Real Property. Debtor filed the *Complaint* before this court in an attempt to nullify the State-Court Foreclosure Judgment (entered on September 25, 2007 and notified on September 28, 2007) and subsequent execution orders after they became final, firm and unappealable (*ergo* executable) rather than seeking any relief whatsoever in the State Court: she did not file a motion for reconsideration, appeal, nor did she file a motion to set the judgment aside or moved for a mistrial as provided in P.R. Rules 47, 48, 49 and 52 of Civil Procedure, 32 L.P.R.A. Ap. V Rs. 47, 48, 49 & 52 (2009). She simply allowed the State-Court Foreclosure Judgment to become final and unappealable and when the execution was imminent by virtue of the Judicial Sale about 3 years later[2], without requesting the State Court to set it aside, she filed for bankruptcy requesting from this court to nullify the state foreclosure procedure. The court finds that the remedy Debtor seeks is "inextricably intertwined" with controversies adjudicated by the State Court because she could only succeed in this case "to the extent that the state court wrongly decided the issues before it." Sheehan v. Marr, 207 F.3d at 39-40. Also see Mills v. Harmon Law Offices, P.C., 344 F.3d at 44. The Rooker-Feldman doctrine bars such actions.

Conclusion

In view of the foregoing, the court declares itself without subject-matter jurisdiction to

---

[2] The State-Court Foreclosure Judgment was notified on September 28, 2007 and the Judicial Sale was executed on August 10, 2010 (Docket No. 29-1).

7

entertain the instant *Complaint* under the Rooker-Feldman doctrine, and therefore, the instant adversary proceeding is hereby dismissed.

Judgment will be entered accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 13th day of April, 2012.

Enrique S. Lamoutte
United States Bankruptcy Judge